SDD:SPN/TAD/MEB
F. # 2015R00079

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ –X

UNITED STATES OF AMERICA

   - against -

TAIROD NATHAN WEBSTER PUGH,

        Defendant.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ –X

Docket No.   15–CR-116 (NGG)

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION <u>IN</u> <u>LIMINE</u> TO ADMIT CERTAIN EVIDENCE AGAINST
DEFENDANT

ROBERT L. CAPERS
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
Tiana A. Demas
Mark E. Bini
Assistant U.S. Attorneys
   (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion in limine in advance of trial in this matter, which is scheduled to commence on February 8, 2015. Specifically, and as set forth in greater detail below, the government seeks to admit relevant evidence pertaining to the charged attempt to provide material support to the terrorist organization known as the Islamic State of Iraq and the Levant ("ISIL") and the defendant's obstruction of an official proceeding. The evidence includes certain terrorist propaganda videos, documents, and other materials recovered from the defendant's computer, as well as videos the defendant accessed via social media. The Court should admit this evidence because it is direct evidence of the charged offenses or, in the alternative, as evidence of the defendant's preparation, plan, knowledge, motive, and intent pursuant to Federal Rule of Evidence 404(b).

STATEMENT OF FACTS

The Indictment charges the defendant with attempting to provide material support to ISIL, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1), as well as obstruction and attempted obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(1) and (c)(2). The charged crimes arise from the defendant's attempt to travel to Syria to join ISIL and his subsequent destruction of various electronic devices that were in his possession when he was stopped by Turkish authorities as he tried to enter Turkey from Egypt.

At trial, the government intends to introduce evidence and testimony regarding the following facts, among others, which establish that the defendant attempted to join ISIL and obstructed and attempted to obstruct an official proceeding.

I.     ISIL

      A.  Background

The government intends to introduce testimony from fact and expert witnesses regarding recent historical events in Syria, Iraq, and elsewhere in the region that led to the formation of ISIL and  ISIL's use of terrorist tactics and recruitment of personnel from the United States and other western countries.

ISIL is a foreign terrorist organization that has existed, in various iterations, since approximately 2004, when it was known as al-Qa'ida in Iraq or Jam'at al Tawhid wa'al-Jihad.  On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq as a Foreign Terrorist Organization ("FTO") under section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist Entity under section 1(b) of Executive Order 13224.  On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq as an FTO and as a Specially Designated Terrorist Entity to add the alias ISIL as its primary name.  The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production.  In an audio recording publicly released on June 29, 2014, ISIL announced a formal change of its name to Islamic State ("IS").

Since 2013, ISIL has claimed credit for numerous terrorist activities, including seizing Mosul, a city in northern Iraq, launching rocket attacks on eastern Lebanon in March 2014, taking hostages for ransom, and, when its ransom demands are not met, executing

hostages, often by decapitating them.[1]  As of October 2015, ISIL was estimated to have gained control of large swaths of territory in Syria, including the northern border city of Jarablus and Raqqa to the South, as well as areas of Iraq including Mosul and Hawija, and parts of Libya.

ISIL's propaganda wing regularly disseminates professionally produced propaganda videos that glorify the violent exploits of ISIL's fighters, which it refers to as "mujahideen."  These videos depict, among other things, the beheading of soliders and civilians, proclaim ISIL's ambition to establish a worldwide caliphate, and seek to recruit new members and fighters.  For example, in late August 2014, ISIL released a graphic video of the beheading of American journalist James Foley.  In early September 2014, the group released a video of the beheading of Steven Sotloff, another American journalist.  Later in September 2014, less than a week after President Obama announced a new military campaign against ISIL, the group released a video produced as a Hollywood-style movie trailer titled "Flames of War" that threatened attacks against U.S. troops.  The video shows images of President Obama and combat operations against U.S. military personnel and equipment followed by the text "Flames of War: Fighting Has Just Begun" and "Coming Soon."  In mid-November November 2014, ISIL claimed responsibility for the execution of Peter Kassig, an American aid worker and former Army Ranger whom ISIL previously had threatened to kill in retaliation for U.S. airstrikes in Iraq and Syria.  ISIL subsequently released a video showing a man dressed in black who, with Peter Kassig's severed head at his feet, stated, "We are eagerly waiting for the remainder of your armies to arrive."  In late

---

[1] For additional detail on ISIL's terrorist activities, see Government's Memorandum of Law In support of Motion For an Anonymous Jury (Nov. 6, 2015), Docket Entry No. 31.

January 2015, ISIL released a video of the beheading of Japanese journalist Kenji Goto and warned that Japan was a target for the militants. Of particular significance here, the defendant possessed several pro-ISIL propaganda films, or excerpts thereof, when he was stopped at the Turkish border, as explained below.

The government intends to prove at trial that ISIL has aggressively and successfully recruited citizens of countries outside of Syria, including U.S. citizens, to come to Syria and join the organization. ISIL has often made Western foreign fighters the face of its recruitment efforts as part of a broader strategy of emphasizing that the conflict in Syria is part of a global jihad aimed at creating a global Islamic caliphate, rather than a regional civil war. Because of the importance of foreign fighters to ISIL's operations, ISIL has committed significant resources toward effectively recruiting them. ISIL's recruitment efforts rely heavily on the use of the Internet, including web-distributed recruiting videos, to motivate foreign fighters to come to Syria. Such videos typically depict ISIL fighters marching, training, and fighting, and urge Westerners either to travel to Syria or Iraq to join ISIL or to carry out its objectives overseas.

II.     The Defendant's Conduct Prior To Traveling to Turkey

The defendant is a United States citizen who lived in Kuwait and Egypt until approximately January 10, 2015. He most recently worked as an airplane mechanic in Kuwait City, Kuwait, for a commercial charter airline. On January 6, 2015, the defendant purchased a one-way ticket from Cairo, Egypt, to Istanbul, Turkey. On January 10, 2015, the defendant was stopped for questioning upon arrival at Ataturk Airport in Istanbul, Turkey, after debarking from a flight from Egypt. The Turkish authorities denied the defendant entry into the country and placed him on a return flight to Cairo, Egypt.

4

When he arrived in Egypt on the evening of January 10, 2015, the defendant was detained pending deportation to the United States.  Upon being detained, the defendant claimed that he had been unable to find work in Egypt and had traveled to Turkey to look for a job.  The defendant denied any desire to travel to Syria.  The defendant's possessions at the time of his detention in Egypt included various electronic media devices, including an HP laptop computer, an Apple iPod, a Samsung mobile telephone, a Pixel mobile telephone, five USB thumb drives (collectively, the "Electronic Devices"), as well as two black backpacks.  The defendant's iPod recently had been reset or initialized, i.e., wiped clean of data.  Many of the defendant's USB thumb drives appeared damaged and were missing their outer casings.

FBI agents took possession of the defendant's Electronic Devices on January 11 and 12, 2015, transported the Electronic Devices to the United States, and obtained a warrant to search the devices.[2]  The ensuing search revealed that the internal memory chips had been removed from four damaged thumb drives.  The search also revealed dozens of terrorist propaganda videos, audio files, images, and documents relating to ISIL in particular and the global jihadist movement in general, along with evidence relating to the defendant's use of social media to access pro-ISIL propaganda materials.  The following is a summary of some of the evidence obtained from the defendant's laptop that the government seeks to introduce into evidence at trial[3]:

---

[2] The thumb drives were recovered on January 12, 2015.

[3] The government also will seek to introduce evidence from Facebook and email search warrant returns, among other sources, establishing that the defendant regularly accessed and commented favorably on various jihadist and pro-ISIL propaganda materials and related news reports in the months leading up to his attempted trip to Syria.  As

- A video that shows maps of various regions of the world being swallowed up by spreading black ink, followed by the words, "Islamic State of Iraq and Sham," an alias of ISIL. The text, "Virtues Of Seeking Martyrdom. Pledge To Die" appears next to an image of the ISIL flag. The video goes on to show images of battle scenes along with various quotations in English glorifying martyrdom, such as, "And those who are killed in the cause of Allah – never will He waste their deeds. He will guide them and mend their condition. And admit them to Pardadise."

- A video providing a detailed history, with English subtitles, of the formation of ISIL and the group's global ambitions. The video shows scenes of graphic violence, including executions and beheadings of captives by ISIL fighters. Toward the end of the video, a man dressed in black, known as "Jihadi John" in the international press, is seen standing over the severed head of former U.S. Army Ranger Peter Kassig and stating, among other things, "We are eagerly waiting for the remainder of your armies to arrive."[4]

- A video depicting the ISIL flag, the sound of gunfire, and a poster-like image of President Obama, with bullet holes ripping into the image until President Obama's face is obscured, followed by the words, "Kill Obama."

- A video with English subtitles that shows a hybrid photograph of Presidents Obama and Bush over the caption "War Criminals," and asks, "Who's the terrorist? Obama or al-Badghadi?," referring to Abu Bakr al-Bagdhadi, the leader of ISIL, before stating, "The USA invaded our country, and bombed our homes." The video then shows ISIL fighters training and carrying out military opertations, firing heavy weaponry, detonating roadside bombs, and waiving the ISIL flag.

- Videos that include, among other things, images of planes, including fighter jets, airplane hangars, and weaponry apparently captured by ISIL during combat operations.

- A video discussing, among other things, ISIL's advance on Kobani, a Syrian town just south of the border with Turkey.

---

discussed further below, this evidence also is admissible as direct evidence of the defendant's motive and intent.

[4] As discussed further below, the government proposes to introduce some of the videos recovered from the defendant's laptop in excerpted form, to avoid undue prejudice. So, for example, the government does not seek to introduce or play for the jury the entire video depictions of the actual beheadings. Rather, the government intends to have a law enforcement witness provide testimony concerning some of the more graphic violence contained in the videos.

- Additional videos discussing the history and formation of ISIL, depicting various aspects of military training and military operations by fighters affiliated with ISIL, glorifying violent jihad and martyrdom, particularly in the service of ISIL, urging Muslims from across the world to join ISIL, and expressing anti-U.S. animus.

- A video titled "Texas Muslim Peldges Allegiance to ISIS in front of Cop."  This audio file contains footage of what appears to be an American citizen proclaiming his  devotion to ISIL in the presence of a law enforcement officer.

- Works by Abdullah Azzam, a Sunni scholar viewed as a an instrumental voice in contemporary Islamic radicalism and a leader in the 20th century revival of violent jihad, including "Defence of Muslim Lands," in which Azzam issued a fatwa, or edict, requiring collective jihad, and "Join the Caravan," in which Azzam urged Muslims to liberate Muslim lands from foreign domination.

- A 68-page Word document saved under the filename "Tairod Pugh" and titled "Jihad; The Forgotten Obligation" that contains a series of religious texts promoting jihad and martyrdom.

<u>ARGUMENT</u>

I.   <u>Evidence Recovered From Laptop Admissible As Direct Evidence or Pursuant to Federal Rule of Evidence 404(b)</u>

The government moves <u>in limine</u> for permission to introduce into evidence videos, audio files, documents, photographs, and other materials recovered from the defendant's laptop computer or accessed by the defendant through social media as direct evidence of the defendant's attempt to provide material support to ISIL and of his attempted obstruction and obstruction of an official proceeding or, in the altnernative, as "other act" evidence offered to prove the defendant's preparation, plan, knowledge, motive, and intent pursuant to Rule 404(b).

A.  Legal Standards

1.  Relevant Evidence Is Admissible At Trial

Federal Rules of Evidence 401 and 402 establish the broad principle that relevant evidence is admissible at trial except as otherwise provided by the United States Constitution, by Act of Congress, or by the Rules.  See Fed. R. Evid. 401, 402; United States v. Abel, 469 U.S. 45, 51 (1984).  Federal Rule of Evidence 403 allows the trial judge to exclude relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice."

"To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt."  United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010).  Rather, evidence is "relevant" if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401; see also United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.").  Thus, evidence is often admissible "to provide background for the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged." United States v. Reifler, 446 F.3d 65, 91-92 (2d Cir. 2006) (internal quotation marks omitted).  "Background evidence may be admitted to show, for example, the circumstances surrounding the events, or to furnish an explanation of the understanding or intent with which certain acts were performed." Untied States v. Coonan, 938 F. 2d 1553, 1561 (2d Cir. 1991) (internal quotation marks omitted).  As the Supreme Court has recognized, in analyzing the

8

admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

It is well established that evidence of uncharged criminal activity is not considered other crimes evidence under Rule 404(b) of the Federal Rules of Evidence if it is inextricably intertwined with the evidence regarding the charged offense or if it is necessary to complete the story of the crime on trial. United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (citing Gonzalez, 110 F.3d at 942); see also 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.20[2][c] (2d ed. 2015) (observing that evidence whose "absence would leave a chronological or conceptual void in the story of the crime" is "intrinsic evidence, and thus not governed by Rule 404"). However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." United States v. Nektalov, 325 F.Supp. 2d 367, 372 (S.D.N.Y. 2004).

### 2.  Admissibility Under Rule 404(b)

Evidence of a defendant's other acts is admissible under Rule 404(b) if relevant to an issue at trial other than the defendant's character – such as proving preparation, plan, knowledge, motive, or intent, see Fed. R. Evid. 404(b)(2) – and if its probative value is not substantially outweighed by the risk of unfair prejudice. See United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000).   The Supreme Court has observed that evidence of extrinsic acts "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental

state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988).

The Second Circuit follows an "inclusionary approach," which admits all relevant "other act" evidence that does not serve the sole purpose of showing the defendant's bad character and that is not overly prejudicial. United States v. Moran-Toala, 726 F.3d 334, 345 (2d Cir. 2013) (internal quotation marks omitted). Evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice when the evidence does not involve conduct more inflammatory than the charged crimes. See, e.g., United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006).

B. Discussion

1. The Evidence Recovered From the Defendant's Laptop is Admissible as Direct Evidence of the Charge Offenses

The video, audio, and documentary evidence referenced above that was recovered from the defendant's laptop is probative of several material facts at issue in this case and is admissible as direct evidence of the charged offenses.

First, it is the government's theory that the defendant viewed himself as part of the global jihadist movement, and took inspiration from the violent videos and other materials he viewed on, and in many instances saved to, his laptop and other electronoic devices. The defendant's immersion in such materials in the days, weeks, and months before he departed for Turkey was a part of an ongoing process of indoctrination that culminated in the defendant's decision to travel to Syria, via Turkey, to join ISIL. The evidence recovered from the defendant's laptop tends to show that the defendant was motivated by a jihadist ideology, shared the aims of ISIL in particular, believed that he had been called to join ISIL,

10

and knew that his skills as an airplane mechanic and former member of the U.S. military would benefit and be welcomed by ISIL.  The evidence therefore is highly probative of the defendant's motive and intent in traveling to Turkey, which is likely to be the central issue at trial.

The evidence constitutes direct evidence of the charged attempt to provide material support to ISIL because it is inextricably intertwined with other evidence of the charged offense and is necessary to enable the jury to understand the complete story of the defendant's conduct and intent.  In order for the jury to understand the defendant's radicalization, his embrace of ISIL's goals, and his willingness and intention to travel through Turkey to the Syrian border to join ISIL, the jury must understand the radical propaganda materials the defendant absorbed and embraced during the weeks before his journey.  The defendant's immersion in pro-ISIL materials calling on him and other Muslims to travel to the caliphate, glorifying martyrdom in the name of jihad, celebrating ISIL military campaigns, spewing anti-U.S. sentiment, and indicating that the defendant's technical skills would be welcome are important aspects of the circumstances surrounding the defendant's attempt to join ISIL and are critical to explaining the intent with which he undertook his criminal conduct.  See United States v. Abu–Jihaad, 630 F.3d 102, 133–34 (2d Cir.2010) (affirming conclusion that "pro-jihadist contents of the videos were relevant to understanding [the defendant's] motive and intent"); United States v. Mehanna, 735 F.3d 32 (1st Cir. 2013) (holding pictures, videos and literature the defendant "absorbed and endorsed" admissible to establish that the defendant, "inspired by terrorist rants, developed an anti-American animus" culminating in his decision to travel to Yemen to join al-qaeda); United States v. El–Mezain, 664 F.3d 467, 509-10 (5th Cir. 2011) (holding that material

11

seized from the defendant, "including images of violence and videos glorifying Hamas and depicting Hamas leaders, was probative of the motive or intent of the [defendant] to support Hamas"); United States v. Jayyousi, 657 F.3d 1085, 1108 (11th Cir. 2011) (holding that televised interview with Osama bin Laden was properly admitted as "state of mind evidence"). It bears emphasizing that the materials seized from the defendant's laptop were among the few items in the defendant's possession when he traveled to Turkey, available to him as sources of inspiration and as potential means of demonstrating his intentions to members of ISIL once he reached the Syrian border. To keep such materials from the jury's consideration plainly would would "leave a chronological or conceptual void in the story of the crime." Weinstein's Federal Evidence § 404.20[2][c]; Gonzalez, 110 F.3d at 942 (explaining that evidence is not "other act" evidence if it is "inextricably intertwined with the evidence regarding the charged offense").

Second, the videos and other materials recovered from the defendant's laptop are highly probative of the defendant's knowledge that ISIL was a designated terrorist organization, and that ISIL engages and has engaged in terrorist activity and terrorism. See 18 U.S.C. § 2339B(a)(1); United States v. Kassar, 600 F.3d 108, 129 (2d Cir. 2011) (observing that statute requires proof that the defendant knows that "the organization he is aiding is a terrorist organization or engages in acts of terrorism"). Section 2339B(a)(1) defines terrorist activity, by reference to Section 212(a)(3)(B) of the Immigration and Nationality Act, to include, among other things, unlawfully seizing, detaining, or threatening to kill another individual in order to induce a government to do or abstain from doing any act, and the use of firearms or explosives to endganger people or property. Section 2339B(a)(1) defines terrorism, by reference to Section 140(d)(2) of the Foreign Relations

12

Authorization Act, Fiscal Years 1988 and 1989, to include "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents." See, e.g., United States v. Ahmed, 94 F. Supp. 3d 394, 419-21 (E.D.N.Y. 2015). Here, the defendant saved to his laptop, and may well have saved to his storage devices – the jury will never know, because the defendant's obstructive conduct succeeded in destroying the relevant evidence – pro-ISIL propaganda depicting, among other things, the group's murder of captives whose governments did not pay ransoms, military combat operations, and threats against the United States and its leaders. These materials thus constitute powerful, direct evidence of the defendant's knowledge that ISIL was a terrorst group that engaged in terrorism and terrorist activity.

Finally, the evidence discussed herein is probative of the defendant's intent to obstruct an official proceeding when he attempted to destroy the thumb drives in his possession after he was denied entry into Turkey. In his Omnibus Pretrial Motion, Docket Entry No. 29, the defendant moved to dismiss Count Two of the indictment, charging obstruction and attempted obstruction of an official proceeding, on the ground that he "could not possibly have had the requisite mens rea" when he destroyed the four USB thumb drives because the destruction allegedly occurred between the time he was denied entry into Turkey and when he arrived in Egypt hours later. (Def. Mot. 16). The defendant argued further that he had no way of "knowing or foreseeing that his actions [in destroying the USB thumb drives] could have the effect of obstructing an ongoing official proceeding" in the United States. (Def. Mot. 16-17). Thus the defendant's intent when he destroyed the thumb drives is sure to be a central issue at trial with respect to Count Two of the Indictment. The government expects to argue that the defendant sought to destroy evidence that he had

13

viewed and saved violent terrorist propaganda videos, including videos produced by ISIL, in addition to border crossing maps and other materials, precisely because he knew such materials would be sought by U.S. law enforcement authorities as proof of his attempt to join ISIL.[5]  The nature of the evidence the defendant attempted to destroy is, of course, highly relevant to his motive and intent in destroying it.  Videos and other materials recovered from the defendant's laptop are probative of the types of materials the defendant likely destroyed through his obstructive conduct, and his intent in destroying them, even if the government is unable establish which documents, in particular, the defendant saved to his thumb drives. See Abu-Jihaad, 630 F.3d at 134 (holding that probative value of materials available to defendant on pro-jihad website outweighed risk of unfair prejudice, notwithstanding that government could not prove that the defendant saw the materials, when defendant's motive and intent in communicating with website were at issue).

The admission of the above-described evidence obtained from the defendant's computer does not run afoul of Rule 403 because the probative value of the evidence is not outweighed, much less "substantially outweighed," by any risk of unfair prejudice.  Many of the videos the government intends to show depict violence at a distance – explosions, use of heavy artillery, firing of automatic weapons, and various forms of combat.  The government does intend to introduce into evidence some images and video content depicting violence more directly, such as the rounding up of captives to be beheaded and some graphic battlefield violence, but the government proposes to play only excerpts of such violence.

---

[5] Although the government has been unable to recover the materials saved by the defendant on the USB thumb drives he destroyed following his expulsion from Turkey, investigating agents have determined, through an examination of the laptop, that some documents viewed on the laptop from one of the destroyed thumb drives included documents relating to ISIL and its control of territory in and around the Turkish border with Syria.

The defendant attempted to join a brutally violent terrorist organization, and carried with him videos and related materials glorifying and promoting the group's violent tactics. As discussed in detail above, this evidence is highly probative of the defendant's knowledge and intent.

In United States v. Abu-Jihaad, the Second Circuit affirmed the trial court's determination that the probative value of video excerpts depicting violent combat scenes, "including an execution and a suicide truck bombing," on the question of the defendant's motive and intent outweighted the risk of undue prejudice. 630 F.3d at 113 n.12, 132-34. In that case, the defendant, an enlistee in the U.S. Navy, was convicted of communicating the anticipated movements of a United State Navy battlegroup to unauthorized persons supportive of violent jihad. Among other issues at trial was the defendant's intent in communicating the protected information. The Second Circuit observed that, "[a]lthough these excerpts included depictions of violence, as was necessary not to distort the sense of the films as a whole, the depictions were limited and, as the district court accurately observed, less gruesome than many seen on nightly news dispatches from Baghdad." 630 F.3d 102 (2d Cir. 2010) (internal quotation marks omitted). The district court, in the ruling affirmed by the Second Circuit, held that because the videos glorified martyrdom and the killing of non-believers, they provided circumstantial information of the defendant's intent. United States v. Abu-Jihaad, 553 F. Supp. 2d 121, 128 (D. Conn. 2008). The same is true here. See also id. ("[I]t is difficult – if not impossible – for the Government to give the jury an accurate sense of the nature of these video without playing for the jury some fo the violent and graphic portions of the videos. Otherwise the jury would have an inaccurate sense of their content."); but see United States v. Al-Moayad, 545 F.3d 139, 159-61 (2d Cir. 2008)

15

(holding that district court's decision to admit lengthy testimony concerning suicide bus bombing, during which witness repeated graphic narrative multiple times, was arbitrary when events were "almost entirely unrelated to elements of the charges").

The government does not intend to introduce or play the relevant video evidence in its entirety.  Rather, it proposes to introduce excerpts of the video evidence and to describe other sections –executions and beheadings, for example, briefly through agent testimony.  The government will provide the Court and the defendant with the proposed exhibits in advance of trial.

For the foregoing reasons, evidence obtained from the defendant's laptop is admissible as direct evidence of the charged offenses.

### 2.  The Evidence is Admissible Pursuant to Rule 404(b)

While the government respectfully submits that the pro-ISIL propaganda videos and related materials recovered from the defendant's laptop constitute direct proof of the charged crimes, the evidence also is admissible pursuant to Federal Rule of Evidence 404(b) as "other act" evidence of preparation, plan, knowledge, motive, and intent.  As set forth above, the evidence is highly probative of the defendant's knowledge of ISIL's existence, goals, and terrorist activities.  That the defendant viewed and saved materials promoting ISIL's ideology and glorifying its methods and means, including its apparent acquisition of military aircraft, is probative of the defendant's motive to join ISIL and his intent to join the group when he traveled to Turkey.  And, as noted, the materials on the defendants laptop are probative of the defendant's intent to obstruct an official proceeding when he destroyed the thumb drives in his possession when he was denied entry into Turkey.

16

With regard to a Rule 403 analysis, here the potentially prejudicial impact of the materials does not outweigh their probative value, much less substantially outweigh it. The defendant is charged with attempting to join a violent terrorist organization; that organization's conduct is not more inflammatory than the charged attempt, provided the attempt is placed in context, as it must be. To the extent the Court is concerned that the evidence presents a risk of undue prejudice, that concern – either in the context of direct or 404(b) evidence – can be addressed through a limiting instruction to the jury. See United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where challenged evidence "not especially worse or shocking than the transactions charged" and where district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence"). In sum, the evidence his highly probative of the charged offenses and should be admitted at trial.

CONCLUSION

For the foregoing reasons, the government's motion should be granted.

Dated:    Brooklyn, New York
          January 11, 2016

ROBERT L. CAPERS
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:    /s/ _____
       Samuel P. Nitze
       Tiana A. Demas
       Mark E. Bini
       Assistant United States Attorneys
       (718) 254-7000

17